UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARCIA WHITMER,

        Plaintiff,

v.

        Case Number 09-12146-BC
        Honorable Thomas L. Ludington

NATIONAL CITY BANK,

        Defendant,
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CANCELING HEARING

      Plaintiff Marcia Whitmer alleges in her June 3, 2009 complaint that her employment with Defendant National City Bank was terminated because of her age in violation of the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2202. On April 15, 2010, Defendant filed a motion for summary judgment, contending that Plaintiff's claim should be dismissed because there is no evidence that its stated reason for the termination decision—poor sales performance—was a pretext for unlawful discrimination. Plaintiff admits in her response that there is no direct evidence of discrimination, but contends that she was treated differently from similarly situated younger employees and that the differences in treatment create an inference of unlawful discrimination based on age.

      Plaintiff's loss of her job as a bank teller as her employer consolidated and changed its emphasis from servicing existing customers to marketing new products, is unfortunate. She is, however, able to advance little evidence that the employment decisions were the result of age discrimination. Defendant is entitled to summary judgment because there is insufficient evidence that the bank's stated reasons for ending Plaintiff's employment after an extended period to assist

Plaintiff to meet the performance criteria were a pretext for unlawful age discrimination.

# I

Plaintiff began working for First of America Bank on October 12, 1992 at the age of forty. Pl.'s Resp. at 1; [Dkt. # 18]. Over the years, her job title and duties changed several times, from "part-time floater teller," to customer service representative, and finally customer service specialist. *Id.* Specialists, like representatives, work as tellers servicing customers, but specialists have additional duties including maintaining the computer system, ordering check cards, and removing account holds. *Id.* at 2. Plaintiff worked at various branches during seventeen years of employment, first in Midland, then Bay City, and finally moving to the South Mission branch in Mt. Pleasant in 1999. *Id.* at 1. The bank also changed names, from First of America Bank to National City Bank. *Id.* In October 2008, National City was acquired by PNC Bank, becoming part of one of the largest banks in the country.

In 1999, when Plaintiff moved to the South Mission branch, Kathy Ellis was the branch manager. Def.'s Mot. at 3; [Dkt. # 1]. In February 2005, Virginia Blanford was hired as the branch manager, and Ellis became office manager in charge of the tellers. *Id.* With the new branch manager, came an increased focus on sales and revenue generation. The tellers, who had the most direct contact with customers, were assigned aggressive goals for referring new deposit, loan, and investment opportunities and selling credit card accounts. *Id.* at 4. In 2005, Plaintiff was rated "achieves some expectations" on her annual review, indicating she met with company expectations in some areas but needed to improve in others. Pl.'s Resp. Ex. 3; [Dkt. # 18-3]. She met her referral goals, compiling an average of 111 percent for the year, but she did not meet her credit card sales goals, compiling an average of 59 percent for the year. *Id.* The bank overall averaged 129 percent

on its referral goals and 107 percent on its credit card sales goals.

The record does not include Plaintiff's 2006 annual review. In 2007 she was again rated "achieves some expectations." She averaged 92 percent on her referral goals and 60 percent on her credit card sales goals. The bank's overall average was 117 percent on its referral goals and 60 percent on its credit card sales goals.

In January 2008, Adrea Hales was hired as National City's district sales manager for the territory including the South Mission branch. In the first six months of Hales' tenure, Plaintiff missed her monthly referral and credit card goals five times. Def.'s Mot. at 5. In July 2008, Hales "coached" Blanford on improving the branch's sales results. At Hales' direction, Blanford coached all South Mission branch employees on improving sales results in mid-July. She also provided Plaintiff specifically with a "performance improvement feedback and coaching action plan" because her referrals and credit card sales were low. Pl.'s Resp. Ex. 6; [Dkt. # 18-6]. The plan indicated Plaintiff should complete ten referral sales and three credit card sales during the second half of July 2008. Plaintiff did not meet those goals. Def.'s Mot. at 5–6. She had eight referrals and one credit card sale. Pl.'s Resp. Ex. 7.

On August 15, 2008, Plaintiff and Blanford met again to discuss Plaintiff's sales and referrals. Plaintiff received a "performance improvement and directive counseling action plan" indicating she should complete 20 referrals and six credit card sales per month, as well as document conversations with at least six customers a day as a way to improve sales. *Id.* Ex. 8. Plaintiff was successful in August, achieving 116 percent of her credit card sales goal. *Id.* Ex. 9. But in October her performance dropped again and she was placed on 90-day disciplinary probation on November 13, 2008. *Id.* Ex. 10. She was required to meet her sales goals for November, December, and

January or her employment would be terminated.

Despite advice and coaching from Blanford, Plaintiff did not meet her sales goals in any of the three months. Def.'s Mot. at 7. On February 4, 2009, Blanford and Ellis met with Plaintiff and informed her that her employment was terminated because of her consistent inability to meet sales goals.

The branch's sales goals were aggressive and several other employees who had recently been hired or transferred to the South Mission branch also did not meet them. All of those employees were in their early 20s and none were terminated for their inability to meet sales goals. Donald Syverson was hired on June 9, 2008 and apparently still works at the South Mission branch; Courtney Kunik was hired on September 15, 2008 and resigned on May 6, 2009; Bethany Schafer was hired on December 8, 2008 and resigned on May 29, 2009; Edmund Price was hired on June 9, 2008 and apparently still works at the South Mission Branch.

After a six-month introductory period, the bank began tracking Syverson's sales in January 2009. He had the same sales goals as Plaintiff and initially performed sporadically. Blanford Decl. In March 2009 Blamford coached Syverson on his sales performance and he has performed well since then, apparently meeting his sales goals. Blanford began tracking Kunik's sales goals in March 2009, after the six-month introductory period. During a coaching session in April concerning Kunik's sales goals, Kunik resigned. Schafer resigned in May 2009, before her six-month introductory period ended. It is not clear from the record whether Price met his sales goals. He was a "universal," not a customer service representative or specialist. As such, his duties were more extensive than the other tellers. *See* Def.'s Mot. at 10–11.

## II

A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party does not raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.

**III**

ELCRA provides that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age . . . ." Mich. Comp. Laws § 37.2202(1)(a). Federal courts generally review ELCRA age discrimination claims pursuant to the same framework as federal Age Discrimination in Employment Act ("ADEA") claims. 29 U.S.C. § 623(a)(1); *see Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009); *Blair v. Henry Filters, Inc.*, 505 F.3d 517 (6th Cir. 2007); *but see Schmitz v. Village of Breckenridge*, No. 08-14559-BC, 2009 WL 3273255, at *11–13 (E.D. Mich. Oct. 9, 2009) (noting that the ADEA requires the plaintiff to prove that age was the "but for" cause of the adverse employment decision but the ELCRA requires only that age was a "motivating factor" in the decision).

Pursuant to the ADEA and ELCRA, an employee may use either direct or circumstantial evidence to demonstrate age discrimination. *Geiger*, 579 F.3d at 620 (citing *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008)). "Direct evidence of discrimination is that evidence, which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (internal quotations omitted). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

Direct evidence of discrimination includes statements made by a decisionmaker that demonstrate animus. *Geiger*, 579 F.3d at 620–21. " 'Statements by nondecisionmakers, or

statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . .' " *Id.* (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)).

In this case, Plaintiff has not offered any direct evidence of age discrimination. Rather, she seeks to prove that age was a "motivating factor" in the decision to end her employment through the use of indirect evidence. *Wexler*, 317 F.3d at 570. Where there is only indirect or circumstantial evidence of age discrimination, Michigan courts employ the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden shifting framework at the summary judgment phase. *See Geiger*, 579 F.3d at 622. "To set forth a prima facie case of age discrimination using circumstantial evidence, a plaintiff must establish the four elements of the well-known *McDonnell Douglas* test: 1) that [s]he was a member of a protected class; 2) that [s]he was discharged; 3) that [s]he was qualified for the position held;" and 4) that the circumstances surrounding her discharge give rise to an inference that age was a motivating factor in the decision.[1] *See Geiger*, 579 F.3d at 622 (citation omitted); *Lytle v. Malady*, 458 Mich. 153, 172–73 (1998).

Once a plaintiff has established a prima facie case of age discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge from employment. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981); *Lytle*, 458 Mich. at 173. If the defendant succeeds in articulating a legitimate and nondiscriminatory reason

---

[1]The fourth element of the test has been stated in various ways. For example, some courts require evidence that the employer treated a similarly situated employee outside the protected class more favorably than the plaintiff; some courts require evidence that the plaintiff was replaced by someone outside the protected class (*Geiger*); and some courts allow the case to move forward even if the replacement was within the protected class as long as the new employee was younger than the Plaintiff. *See Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516 (6th Cir. 2008); *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307 (6th Cir. 2007).

for the discharge, the burden returns to the plaintiff who must show by a preponderance of admissible evidence that the defendant's stated reasons are not the real reasons, but a pretext for unlawful discrimination. *Lytle*, 458 Mich. at 174. A plaintiff can show pretext by demonstrating "either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge." *Jones v. Potter*, 488 F.3d 397, 406 (6th Cir. 2007).

Here, Defendant concedes that Plaintiff has established a prima facie case of age discrimination in violation of ELCRA. Defendant contends, however, that Plaintiff cannot show that its articulated reason for the decision—a long-term and continuing inability to meet sales goals—is a pretext for discrimination.

Plaintiff admits she did not meet her sales goals, but contends that her inability to meet the goals was not the real reason she was discharged. She emphasizes that other, similarly situated employees, including Courtney Kunik and Bethany Schafer, were not terminated despite missing their sales goals. Plaintiff further emphasizes that the sales goals were artificially inflated and that for most of her career she was not expected to meet the sales goals. Plaintiff contends that the increased emphasis on sales goals and her subsequent termination for failure to meet them were an attempt to cover up age discrimination.

Plaintiff's comparisons to Kunik and Schafer are inapposite. Although both women are much younger—both were born in 1986 and Plaintiff was born in 1952—both Kunik and Schafer had been at the bank less than six months in January 2009 and Plaintiff had been there nearly seventeen years. It is reasonable for an employer to have higher expectations for a seventeen-year employee than a three-month employee. Moreover, both Kunik and Schafer resigned shortly after

Plaintiff's termination. Indeed, Kunik resigned during a coaching session initially intended to improve her sales performance.

Moreover, January 2009 was not the first month that Plaintiff missed her sales goals. She consistently missed her goals throughout the three-year period preceding her termination while the bank as a whole consistently met its goals. Pl.'s Ex. 5; [Dkt. # 18-5]. In 2005, the bank as a whole exceeded its referral goals by twenty-nine percent and its credit card goals by seven percent. Plaintiff exceeded her referral goals by eleven percent, but missed her credit card goals by forty-one percent. In 2006, the bank again exceeded its referral goals by twenty-nine percent and its credit card goals by seven percent. Plaintiff missed her referral goals by twenty-one percent and her credit card goals by forty-eight percent. In 2007, the bank again exceeded its referral goals by seventeen percent, but missed its credit card goals for the first time, by forty percent. Plaintiff missed her referral goals by eight percent and her credit card goals by forty percent.

In 2008, a new manager started at the bank and emphasis on sales goals increased. Beginning at approximately the same time, Plaintiff began receiving extensive "coaching" on improving her sales performance and even warnings about the potential consequences if her performance did not improve. During that year, Plaintiff missed her credit card sales goals in eleven out of twelve months and her referral goals in ten out of twelve months. Def.'s Mot. at 14. After two documented "coaching" sessions did not result in sustained improvement, Plaintiff was provided a written probationary notice on November 13, 2008. The notice indicated she would be discharged in ninety days if her sales did not increase. Her sales performance did not improve and she was discharged in February 2009.

Plaintiff also asserts that the sales goals were artificially inflated and that no teller was

expected to meet them on a monthly basis. Plaintiff offers no evidentiary support for this assertion. Indeed, the record suggests that at least one other employee, Syverson, improved his sales performance enough to retain his position after being coached by Blanford. The evidence demonstrates that the bank's emphasis changed, but the sales goals, while aggressive, were not unreachable. Plaintiff has not offered evidence that rebuts Defendant's assertion that Plaintiff's discharge was motivated by her inability to meet the sales goals.

**IV**

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment [Dkt. # 16] is **GRANTED**.

It is further **ORDERED** that the hearing scheduled for **July 15, 2010 at 9:30 a.m.** is **CANCELED**. The parties papers sufficiently describe the legal and factual issues relevant to the motion.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: July 14, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 14, 2010.

s/Tracy A. Jacobs  
TRACY A. JACOBS

---